# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Rebecca R. Pallmeyer | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 3379 | **DATE** | 9/20/2004 |
| **CASE TITLE** | James Wilson vs. City of Chicago | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ■ Status hearing set for 10/4/2004 at 9:00 A.M..
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion And Order. Defendant's motion for summary judgment (24-1) is granted with respect to Plaintiff Wilson's lunch pay claim, but otherwise denied without prejudice. Plaintiff's motion to conditionally certify the class (27-1) and to give notice to potential class members (27-2) is denied without prejudice.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | 2 number of notices | **Document Number** |
| | No notices required. | | |
| ✓ | Notices mailed by judge's staff. | | |
| | Notified counsel by telephone. | SEP 22 2004 date docketed | |
| | Docketing to mail notices. | | 41 |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| | | 9/20/2004 date mailed notice | |
| ETV | courtroom deputy's initials | ETV mailing deputy initials | |
| | Date/time received in central Clerk's Office | | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JAMES WILSON, individually and on behalf )
of a class of persons similarly situated, )
)
Plaintiffs, )
)
v. ) No. 02 C 3379
)
CITY OF CHICAGO, a municipal corp., ) Judge Rebecca R. Pallmeyer
)
Defendant. )

DOCKETED
SEP 22 2004

## MEMORANDUM OPINION AND ORDER

Plaintiff James Wilson ("Wilson" or "Plaintiff"), is a Chicago police officer. In this lawsuit, Mr. Wilson alleges that during his term as a Probationary Police Officer ("PPO"), Defendant City of Chicago (the "City" or "Defendant") willfully failed to compensate him for overtime work, including meal periods, in violation of the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. ("FLSA"). After a lengthy period of discovery, the City filed a motion for summary judgment on January 16, 2004. Plaintiff responded first by filing a motion for conditional certification of a class of similarly situated PPOs, which the court construes as filed under § 216(b) of FLSA. Plaintiff has also filed a response in opposition to Defendant's summary judgment motion. For the reasons set forth below, Defendant's motion for summary judgment is granted in part and denied in part without prejudice, and Plaintiff's motion to certify the class and give notice to potential class members is denied without prejudice.

## FACTUAL BACKGROUND

In support of its motion for summary judgment, the City has filed a statement of undisputed material facts, supported by exhibits, as required by this court's Local Rule 56.1. Plaintiff has responded to Defendant's statement and has furnished a statement of additional undisputed material facts pursuant to Local Rule 56.1(a)(3). In several instances, however, Plaintiff has denied assertions in Defendant's Local Rule 56.1 statement, but has cited no evidence in support of his

41

denial. In such circumstances, the statements are deemed admitted.

The parties here agree that under the Fair Labor Standards Act, the City is required to pay its police officers overtime compensation (in premium pay or compensatory time) for all hours worked in excess of 171 in a 28-day pay period. *See* 29 U.S.C. § 207(k); 29 C.F.R. § 553.230. In 1986, the Chicago Police Department ("CPD") implemented an overtime policy (the "Policy") that provided that PPOs would receive compensatory time at a rate of time and one half for all hours worked in excess of 171 hours in a 28-day period. (Defendant's 56.1 Statement of Undisputed Material Facts (hereinafter "Def.'s 56.1 Stmt.") ¶ 11.) In addition to providing PPOs with compensatory time for hours in excess of 171 ("FLSA overtime"), Department policy also compensates PPOs on an hour-for-hour basis for any work beyond their daily tours of duty, for work on designated holidays, and for their work-related court appearances ("non-FLSA overtime"). (*Id.* ¶¶ 12, 17.) The Policy provides that the first 480 hours of FLSA overtime, and all non-FLSA overtime, earned by PPOs must be taken as compensatory time rather than as additional pay. (*Id.* ¶ 12.) Under the Policy, PPOs must exhaust all FLSA compensatory time before non-FLSA compensatory time may be used. (*Id.* ¶ 30.)

Plaintiff James Wilson was hired by Defendant City of Chicago on September 13, 1999 as a Police Recruit assigned to the CPD training academy. (*Id.* ¶¶ 5-6.) On February 6, 2000, Wilson graduated from the academy and was sworn in as a PPO. (*Id.* ¶ 7.) On or about September 12, 2000, Wilson completed his probationary period and became a career-service police officer with the CPD. (*Id.* ¶ 8.)

**Audit of PPO Payroll Records by Officer Smith**

Plaintiff filed his original complaint in this case on May 10, 2002. At some point after that date, Officer Deborah K. Smith of the CPD Auditing and Internal Control Division conducted an audit of the PPO "Time and Attendance" records during the period June 1999 through April 2001, a period that included the seven months in which Plaintiff Wilson was a PPO. (*Id.* ¶¶ 33, 35, 38.)

2

The audit revealed errors in calculations of overtime for dozens of PPOs. As a result, in March 2003, Defendant made more than 5,000 hours in total adjustments by adding hours to or deducting hours from these PPOs' records. (*Id.* ¶ 49; Plaintiff's 56.1(a)(3) Statement of Undisputed Material Facts (hereinafter "Pltf.'s 56.1 Stmt.").) One of the largest adjustments was to Plaintiff Wilson's records; specifically, following the audit, Defendant credited Wilson with 36 additional hours of non-FLSA compensatory time. (Def.'s 56.1 Stmt. ¶ 49.)

With respect to these 36 hours, Smith determined that the district timekeeper had failed to include eight hours of non-FLSA compensatory time for the January 1, 2000 New Year's Day holiday. (Def.'s 56.1 Stmt. ¶ 45.) She also determined that the timekeeper had mistakenly placed the total of earned FLSA straight time and non-FLSA compensatory time in an incorrect box on Wilson's Time and Attendance Record for both the May 14, 2000 to June 10, 2000 and June 11, 2000 to July 8, 2000 periods (referred to as "Cycle 6" and "Cycle 7," respectively.) (*Id.* ¶¶ 46-47.) Defendant asserts that these two 28-day cycles were the only ones in which Plaintiff Wilson earned any FLSA overtime. (*Id.* ¶ 44.)[1] First, during the period May 14, 2000 through June 10, 2000 ("Cycle 6"), Wilson worked 180.5 hours, or 9.5 hours in excess of 171 hours. Similarly, between June 11, 2000 and July 8, 2000 ("Cycle 7"), Wilson worked 217.5 hours, or 46.5 hours over 171 hours. (*Id.* ¶¶ 40-44, 52, 54; Ex. B to Ex. 4 to Def.'s Mem.) According to Defendant, Wilson earned a total of 84 compensatory hours (46.5 + 9.5 = 56; 56 x 1.5 = 84) during Cycles 6 and 7. Defendant contends that Wilson used all of these 84 hours by taking compensatory time between May 31, 2000 and May 5, 2001. (Def.'s 56.1 Stmt. ¶ 53.)

Defendant insists that the errors uncovered in Smith's audit "did not change the total

---

[1] Plaintiff denies this assertion, noting that Defendant has presented three different versions of his Time and Attendance records; he does not suggest that any of the versions reflect overtime work during any other pay cycles, however. As discussed further below, the court also finds the various versions of pay records confusing, but concludes that two sets are copies of the original, with corrections marked; all three sets confirm Defendant's assertions that Cycles 6 and 7 are the only ones in which Wilson worked more than 171 hours.

3

balance of the 26 hours of FLSA half-time that Wilson was entitled to receive for working in excess of 171 hours in Cycles 6 and 7," (*id.* ¶ 48), but the court is unable to verify this assertion from the materials Defendant has submitted. The expression "half-time" is, initially, confusing; the court would expect that in crediting an officer for FLSA overtime, the CPD might simply record a single figure equal to one-and-one-half the number of overtime hours worked. From its own review of the records, the court understands, instead, that the CPD initially records additional hours equal to the number of overtime hours worked, and then records yet another entry, in the amount of one-half the number of overtime hours worked. (*See* Smith Aff., Ex. 5 to Def.'s 56.1, at ¶¶ 11, 13.)[2] Again from its own review of the records, the court is unable to conclude that Smith's audit "did not change the total balance of the 26 hours of FLSA half-time" to which Wilson was entitled. Instead, the figures in Officer Smith's affidavit reflect that Mr. Wilson should have been credited with 28 hours of half time for work performed in Cycles 6 and 7 (4.75 half-time hours for Cycle 6 plus 23.25 half-time hours in Cycle 7 equals 28 hours, not 26 hours).

Defendant asserts, further, that the 36-hour error Officer Smith detected in Wilson's records was "not based on the timekeeper's failure to calculate Wilson's FLSA overtime at the rate of time and one half." (*Id.* ¶ 50.) Again, however, because Defendant has not explained precisely how this 36-hour figure was calculated, the court is unable to verify this assertion, either.

The court recognizes that Plaintiff bears the burden of proving that his FLSA rights were violated, and has presented little indication that he will be able to meet that burden. Indeed, in his deposition, Wilson acknowledged that he is unable to determine whether any of the 36 hours credited to him related to FLSA overtime. (*Id.* ¶ 51.) He acknowledged, further, that, based on the overtime hours that he recorded in his Fraternal Order of Police handbook, the CPD has recorded his compensatory time accurately, with the exception of one hour each on April 25, 2000 and

---

[2] Presumably, this record keeping procedure is necessary to enable CPD to account for those overtime hours that do not exceed 171 in a 28-day cycle, but do entitle the PPO to "non-FLSA compensatory time."

June 18, 2000. (Pltf.'s 56.1 Stmt. ¶ 1; Wilson Dep., Ex. 2 to Def.'s Mem., at 65.) He also testified that he had neglected to record at least four hours of compensatory time in his handbook for which the City had nevertheless compensated him. (Defendant's Reply to Plaintiff's 56.1(a)(3) Statement of Undisputed Material Facts (hereinafter "Def.'s Reply to Pltf.'s 56.1 Stmt.") ¶ 1; Wilson Dep., at 55-57, 59.)

The court is nevertheless unable to conclude that there are no material disputes of fact in the record now before the court. Wilson notes that Defendant has provided him with two different versions of his Time and Attendance Records and submitted yet another version to the court. As a result, he urges, he "cannot confirm" Defendant's statements regarding his hours. (Wilson's Response to Defendant's Statement of Material Undisputed Facts (hereinafter "Pltf.'s Resp. to Def.'s 56.1 Stmt.") ¶¶ 40-48, 50, 52-55; Pltf.'s 56.1 Stmt. ¶¶ 2-3; Exs. 2-4 to Wilson's Response to Defendant's Motion for Summary Judgment (hereinafter "Pltf.'s Resp. Mem."). Wilson even suggests that he "cannot be sure which, if any of these Time and Attendance Records were altered prior to being supplied to Wilson and this Court." (Pltf.'s Resp. to Def.'s 56.1 Stmt. ¶¶ 40-50, 52-55, citing Exhibits 2, 3, and 4.) Unfortunately, Wilson does not identify significant differences between the three sets of records himself, but the court's own review leaves at least some questions unanswered. As noted above, two of the three sets of records appear to be copies of the first, with additional annotations. Defendant claims that these three sets of records do not materially differ. (Def.'s Reply to Pltf.'s 56.1 Stmt. ¶¶ 2-3.) It does appear that the hours of work recorded in Cycles 6 and 7 on these three sets of time sheets are the same; the totals for those Cycles, however, as set forth on the versions that Plaintiff has submitted as Exhibits 3 and 4, have been altered by hand. The time sheet in Exhibit 2 (apparently the original unaltered record) indicates that Wilson worked 180.5 hours during Cycle 6 and earned 4.75 FLSA "half-time" hours and 28.5 hours of non-FLSA compensatory time. For Cycle 7, Exhibit 2 suggests that Wilson worked 217.5 hours, earning 23.25 FLSA "half-time" hours and 42.25 hours of non-FLSA

compensatory time. Plaintiff's Exhibit 4 (which is identical to the corresponding Exhibit B to Defendant's Exhibit 4) reflects these same figures, but a line has been drawn through the 42.25 non-FLSA figure. Plaintiff's Exhibit 3 shows that non-FLSA compensatory time for Cycle 6 has been changed to 33.25 hours. For Cycle 7, a line is drawn through a box indicating that Wilson worked 8 hours of "Actual Overt[ime]" on July 4, 2000; apparently as a consequence, his total number of hours worked is reduced by 8 hours, to 209.5. The sheet also indicates that Wilson received 16 hours of "Comp[ensatory] Time." Unfortunately, Defendant has not offered any explanation for the existence of three different sets of records, nor has Defendant explained the apparent alterations. Although it appears that none of the alterations affect Wilson's FLSA-compensatory time totals, the court is unable to make that determination without explanation from Defendant.

**Compensation for Meal Time**

Wilson claims that the City's failure to treat PPOs' half-hour meal periods as hours worked violates the FLSA. (Pl.'s Resp. to Def.'s 56.1 ¶ 64.) His sole apparent basis for this claim is the fact that PPOs are assigned to shifts that span eight-and-one-half hours. The parties agree that a PPO who is called upon to perform law enforcement duties during his scheduled meal period is entitled to overtime pay, but Defendant asserts that the half-hour meal period is ordinarily non-working time. (Id. ¶ 68.) In its interrogatories, Defendant asked Wilson to "[i]dentify the specific month, day and year that you contend that you did not receive a meal period while you were a probationary police officer because you were directed to perform work on behalf of the Chicago Police Department." (Ex. 7 to Def.'s Mem., at 4.) Wilson responded that PPOs "are unable to leave their sector during their meal period" and must respond to calls if they are needed during the meal break. (Id.) In his deposition, Wilson testified that, "when you're a policeman, . . . you eat in your district during your 8-hour shift. . . . I just can't take the squad car and go home." (Def.'s 56.1 Stmt. ¶ 66.) Wilson acknowledged in his deposition, however, that he did not submit any

6

overtime slips for time worked during meal periods while he was a PPO. (*Id.* ¶ 67.) Officer Smith testified that, during the period 1988 through 2001, between approximately ten and twenty PPOs in her district submitted overtime slips for meal periods that were missed because of work requirements. (Pltf.'s 56.1 Stmt. ¶ 7; Smith Dep., Ex. 7 to Pltf.'s 56.1 Stmt., at 30-31.)

## DISCUSSION

Defendant seeks summary judgment, arguing that Plaintiff has made no showing of any entitlement lost to overtime pay, nor any basis for a finding that any FLSA violation was wilful, sufficient to support an extension of the statute of limitations from two years to three years. Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). In determining whether there is a genuine issue of fact, the court must view the evidence and draw all reasonable inferences in favor of the party opposing the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

### I.   Overtime Calculation

The FLSA allows law enforcement agencies to calculate overtime for law enforcement personnel based on a 28 day work period, so that the department must pay overtime only when employees have "tours of duty which in the aggregate exceed" 171 hours in a 28 day period. *Leahy v. City of Chicago*, 96 F.3d 228, 230 (7th Cir. 1996) (citing 29 U.S.C. § 207(k)(1); 29 C.F.R. §§ 553.201(a), 553.230). Defendant argues that Wilson has failed to establish that the City denied him compensation for overtime while he was a PPO for several reasons. (Defendant's Memorandum of Law in Support of Its Motion for Summary Judgment (hereinafter "Def.'s Mem."), at 2.) It is undisputed that the CPD's overtime policy provides that PPOs receive compensatory time at a rate of time and one half for all hours worked in excess of 171 hours in a 28 day period. (Def.'s 56.1 Stmt. ¶ 11.) Defendant urges that the Time and Attendance Records establish that,

for the two 28-day periods in which Wilson worked more than 171 hours, the City properly provided him with compensatory time at a rate of time and one half. (Def.'s Mem., at 2; Def.'s 56.1 Stmt. ¶¶ 40-44.) Defendant contends, further, that records show that Wilson used all of his 84 hours in compensatory time between May 31, 2000 and May 5, 2001. (Id. ¶ 53.) Defendant urges, therefore, that "Wilson has already received and used the total amount of FLSA compensatory time that he was entitled to receive as a PPO even before he filed this lawsuit." (Def.'s Mem., at 2-3.)

As noted above, Plaintiff bears the burden of demonstrating that he performed work for which he was not compensated. *Anderson v. Mt. Clemons Pottery Co.*, 328 U.S. 680, 686-87 (1946). Apart from his criticisms of Defendant's records, Plaintiff has done little in responding to this motion that suggests he will be able to meet this burden. He has identified two hours of compensatory time he claims to have worked, one on April 25 and another on June 18, 2000, for which he was not credited by the City. Defendant notes that the hour worked on April 25, 2000 not only occurred before the statute of limitations applicable to this lawsuit, filed on May 10, 2002, but also would not bring Plaintiff's total for the relevant pay cycle above 171 hours. (Def.'s Reply in Support of Summary Judgment, at 5.) With respect to the hour in June, Defendant observes that the City more than made up for any loss by crediting him for 1.25 hours that he failed to record in that pay period and honoring his overstatement, by 9.25 hours, of compensatory time he worked during that cycle. If Plaintiff is unable to demonstrate that he himself was not compensated properly, he may not be qualified to represent a class of PPOs; his failure to file a motion for conditional class certification for many months after initiation of this lawsuit exacerbates the court's concern in this regard. The court recognizes, further, that limitations defenses may well bar any recovery by other PPOs.

The court is nevertheless reluctant to grant Defendant's motion for summary judgment. The discrepancies in the three sets of time sheets that appear in the record may well be susceptible to explanation, but the handwritten notations described above are confusing, and the court is unable

to determine the circumstances in which they were made or the reasons for them. Particularly in light of the audit which resulted in thousands of hours of adjustments to PPO time records, the court is unable to conclude that there are no disputes of material fact concerning the PPO overtime claim. The court therefore denies Defendant's motion for summary judgment on this issue. The court will, however, entertain a renewed motion if Defendant can provide a satisfactory explanation for the record discrepancies and a basis for the court to conclude that the errors detected by the audit related only to non-FLSA overtime.

## II. Compensation for Meal Periods

As noted, Plaintiff contends that Defendant acted improperly in crediting PPOs with eight hours for an 8-1/2 hour shift. Defendant argues that the one-half hour for which Plaintiff was not compensated is a meal period for which no compensation is required under FLSA. (Def. Mem., at 3.) Defendant notes that the City is permitted to exclude the 30-minute meal period from hours worked for PPOs under 29 C.F.R. § 553.223(b), which permits agencies that, like the CPD, elect to use the exception in § 207(k) to exclude meal periods from the calculation of hours worked on tours of duty of 24 hours or less

> provided that the employee is completely relieved from duty during the meal period, and all the other tests in § 785.19 of this title are met. On the other hand, where law enforcement personnel are required to remain on call in barracks or similar quarters, or are engaged in extended surveillance activities (e.g., "stakeouts"), they are not considered to be completely relieved from duty, and any such meal periods would be compensable.

29 C.F.R. § 553.223(b). Our Court of Appeals and other circuit courts have adopted the "predominant benefit" test for determining whether meal periods constitute compensable work time under the FLSA. *Leahy*, 96 F.3d at 230 n.2 (citing *Alexander v. City of Chicago*, 994 F.2d 333, 337 (7th Cir. 1993); *Avery v. City of Talladega*, 24 F.3d 1337, 1345 (11th Cir. 1994); *Henson v. Pulaski County Sheriff Dep't*, 6 F.3d 531, 534 (8th Cir. 1993); *Lamon v. City of Shawnee*, 972 F.2d 1145, 1155-57 (10th Cir. 1992). Under this test, "[a]n employee is considered to be completely relieved from duty during a meal period when the employee's time is not spent predominantly for the benefit

9

of the employer." *Id.* at 230 n. 2. A police officer must be compensated for meals during which he "cannot comfortably and adequately spend the mealtime because the officer's time or attention is devoted primarily to official responsibilities." *Id.* (citing *Lamon*, 972 F.2d at 1155-56). "If during meal periods a police officer's time and attention are primarily occupied by a private pursuit, presumably the procurement and consumption of food, then the officer is completely relieved from duty and is not entitled to compensation under the FLSA." *Id.* (citing *Lamon*, 972 F.2d at 1157).

As Defendant correctly observes, Wilson has failed to identify any instances on which his 30-minute meal period was denied or which he spent predominantly for the benefit of the CPD. (Def.'s Mem., at 9.) In response to Defendant's request that Wilson identify the dates on which he did not receive a meal period because he was directed to perform work on behalf of the CPD, Wilson merely responded that PPOs are "unable to leave" during meal periods and "must respond" if they are called during meal breaks. (Ex. 7 to Def.'s Mem., at 4.) At his deposition, Wilson testified that he ate lunch within his assigned district and observed that, "I just can't take the squad car and go home." (Def.'s 56.1 Stmt. ¶ 66.)

Wilson notes Smith's testimony that, during the period 1988 through 2001, between approximately ten and twenty PPOs in her district submitted overtime slips for meal periods that were missed because of work requirements. (Smith Dep., at 30-31.) Wilson urges, "Clearly, there have been more than 10-15 instances when a PPO has been called from duty during their lunch period," but cites no support for this assertion. (Pltf.'s Opp. Mem., at 5.) Wilson further insists that, although he could not recall any instances in which he was called off of his lunch period, a reasonable jury could nevertheless find that there were such instances. (*Id.*)

The court disagrees. If Plaintiff himself cannot recall even a single instance in which he was required to perform police work during his lunch break, no reasonable jury could find that such instances occurred. Nor does the court find it implausible that such instances, among all PPOs in a given district, were rare. Summary judgment is properly granted to Defendant on this issue.

10

## III. Willful FLSA Violation

Even if the court finds Defendant liable under the FLSA, Defendant urges that Wilson has failed to establish that Defendant's actions were willful. (*Id.* at 3.) In an FLSA claim, the plaintiff bears the burden of proving that a defendant's conduct was willful for purposes of the statute of limitations. *Bankston v. State of Illinois*, 60 F.3d 1249, 1253 (7th Cir. 1995) (citing *Walton v. United Consumers Club, Inc.*, 786 F.2d 303, 308 (7th Cir. 1986)). Our Court of Appeals has explained that "[a]n employer acts willfully, for purposes of establishing the proper statute of limitations, where he knows or shows reckless disregard for whether his actions are unlawful under the FLSA." *Id.* (citing *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988)). Whether the two- or three-year statute of limitations applies is a question of fact. *Id.*

Defendant urges that there is no evidence that it intentionally or recklessly failed to calculate the compensatory time owed to Wilson, or that it knowingly denied compensation owed to him for working during meal periods. (Def.'s Mem., at 10.) Wilson argues that Defendant was reckless, as it "should have known that [there] would be continuous mistakes" in the calculation of PPOs' time because Defendant "recklessly disregarded [its] duty under the FLSA by using accounting procedures that are overly complex, burdensome, unreliable, and prone to errors." (Pltf.'s Opp. Mem., at 3.) In support, Wilson cites his allegations that Defendant's audit indicating that it had "miscalculated" more than 5000 hours for PPOs for the period June 1999 through April 2001 failed to show what proportion of those hours were overtime hours. (Pltf.'s Resp. to Def.'s 56.1 Stmt. ¶¶ 4-5.)

Defendant was unquestionably aware of the FLSA's requirements and adopted elaborate time-keeping records in an explicit effort to meet those requirements. These circumstances are inconsistent with a finding of wilfulness. Although Plaintiff characterizes the procedures as overly complex and burdensome, he does not suggest that the any of the policies themselves permitted FLSA violations. The strongest argument that can be made may well be that the audit

11

demonstrates misunderstanding of the procedures on the part of CPD record keepers or negligence in adhering to them. The Seventh Circuit has explained that a greater showing than this is required to expand the statute of limitations in an FLSA challenge: "We . . . [have] defined "willful" for purposes of § 6(a) as requiring proof that 'the defendant's actions were knowing and voluntary and that he knew or reasonably should have known that those actions violated' the statute . . . ." *Walton v. United Consumers Club, Inc.*, 786 F.2d 303, 311 (7th Cir. 1986). Although the court will reserve ruling on this matter pending any renewed motion for summary judgment, it is inclined to rule in favor of Defendant on this issue.

## CONCLUSION

For the reasons stated above, Defendant's motion for summary judgment (Docket No. 24-1) is granted with respect to Plaintiff Wilson's lunch pay claim, but otherwise denied without prejudice. In light of the court's concerns that Plaintiff Wilson himself may have no viable FLSA claim, and his failure to establish that other members of the purported class have suffered any violation of their rights, his motion to conditionally certify the class (Docket No. 27-1) and to give notice to potential class members (Docket No. 27-2) is denied without prejudice, as well.

ENTER:

Dated: September 20, 2004

REBECCA R. PALLMEYER
United States District Judge